# Illinois Central Railroad Company

*v.*

## Anthony Hall.

1. NEGLIGENCE—*rule as to comparative, where both parties are guilty.* In a suit against a railroad company for damages occasioned by the negligence of its servants, where it appears the plaintiff's own negligence was the cause of the injury complained of, or where the negligence of the parties is equal, or nearly so, there can be no recovery. It is only where the negligence of the plaintiff is slight, in comparison, and that of the party causing the injury is gross, that a recovery is warranted, except in cases where the injury is wilfully inflicted.

2. SAME—*what constitutes.* It is negligence for a person to walk upon the track of a railroad, whether laid in a street or upon an open field, and he who deliberately does so will be presumed to assume the risk of the peril he may encounter.

APPEAL from the Circuit Court of Alexander county; the Hon. DAVID J. BAKER, Judge, presiding.

Messrs. GREEN & GILBERT, for the appellant.

Mr. SAMUEL P. WHEELER, and Messrs. LINEGAR & LANSDEN, for the appellee.

Mr. JUSTICE SCOTT delivered the opinion of the Court:

Appellee was struck by a moving engine on appellant's road, and this action is to recover damages for the injuries sustained. It is shown that, on Levee street, between its intersection with 22d and 26th streets, in the city of Cairo, the company had two tracks, which were almost constantly in use. By an ordinance of the city, it was made unlawful to run trains, within the limits of the corporation, at a rate of speed greater than six miles per hour. The city has never assumed to grade this street at the point in question, and prepare it for the use of the public. It could not be used by carriages, nor conveniently by persons on horseback. There was a path between the tracks and on one side for persons

traveling on foot, that could be and was considerably used with entire safety.

Appellee had been to the city, and was returning to his home, beyond the limits of the corporation, in company with three of his neighbors. He was walking on the river track, and, hearing the approach of a train, stepped over to the other, or inside track, where he was almost instantly struck by an engine moving in the same direction with the one he was endeavoring to avoid. The evidence shows conclusively that, had appellee stopped on the path between the tracks, as Allcock did, who was walking with him, he would have been out of danger.

There is no dispute that signals of warning were given by the ringing of the bells on both engines, and it seems most singular they were not heard by any of the four persons on the tracks until the trains were within a few yards of them. It can only be accounted for by the fact the wind was blowing strong from the opposite direction, which prevented them from hearing readily.

When the attention of appellee was attracted, there was absolutely nothing to prevent his seeing both advancing trains, had he looked. He says, in his testimony, that he "did not take the precaution to look and see if there was a train coming on the inside track."

The only disputed facts which tend to establish negligence on the part of the company, is as to the speed at which the trains were being run. On this point, the testimony is contradictory. Appellee's witnesses fix the rate at from twelve to twenty miles per hour, while appellant's witnesses state neither train was being run faster than six miles per hour. The train on the inside track, drawn by engine No. 19, had just started—had hardly got under way—and it seems almost incredible it could have acquired so high a rate of speed in so short a time as that insisted upon by appellee. There is no way the speed of a train can be accurately ascertained. It can only be arrived at approximately, by the judgment of the

several witnesses. Their statements in this case are so con-
flicting that we are left more to conjecture than anything else,
as to the speed of the trains. There are facts, however, that
assist our understanding and enable us to form a more accu-
rate judgment as to the rapidity with which the engines were
moving. The testimony is, appellee was struck by the engine
on his legs. and knocked down, and yet there were no con-
siderable bruises or wounds on that part of his person. It is
inconceivable that an engine, moving at the rate of sixteen
miles an hour, should strike a man on the legs and produce
no physical injuries. This fact strengthens the theory of
appellant, that the trains were not running with any great
rapidity.

We may, therefore, fairly conclude the testimony leaves it
doubtful whether the engines were being driven at an unlaw-
ful rate of speed. The vital question, then, is as to the com-
parative negligence of the parties.

There can be no pretense the injury was wantonly inflicted.
The engine-driver on engine No. 27, when he saw appellee
on the track ahead of him, had a right to expect when he
heard the sound of the bell he would get out of the way.
This he did do; but the engine-driver on No. 19 could not
anticipate he would get upon the inside track, in front of his
train, when there was safe standing room on either side. As
soon, however, as he saw the danger to which appellee had
exposed himself, he reversed the engine. and used every pos-
sible means in his power to stop the train, to avoid the acci-
dent.

But did appellee exercise that care and caution, for his
personal safety, that an ordinarily prudent man would do
under like circumstances? If he did not. it must be admit-
ted the law is, his negligence would bar a recovery.

It may be conceded both parties had an equal right to the
use of the street—the company for the purpose of transacting
its ordinary business, and appellee the right to travel upon
it. The law makes it the duty of the company to exercise

the highest degree of care, for the safety of persons using the street, consistent with the exercise of its franchises. The citizen must also employ a reasonable precaution for his personal security. It is negligence for a person to walk upon the track of a railroad, whether laid in the street or upon the open field, and he who deliberately does so will be presumed to assume the risk of the perils he may encounter. The crossing of a track of a railroad is a different thing. The one is unavoidable, but in the other case he voluntarily assumes to walk amid dangers constantly imminent. It is sought, in this case, to justify the conduct of appellee, in traveling upon the track of the railroad, by the fact there were no good walks elsewhere on that street for persons on foot, nor had the street, outside the road-bed, been graded to accommodate the travel. This was no fault of the company. It was not its duty to grade the street. The street is eighty feet wide, and, if graded, might be used with safety, as ordinary streets, notwithstanding the railroad is laid in it; but there was a path between the tracks and one at the side, which appellee could have used without the least danger. The side path was not so easy to walk upon as that between the rails, but that fact did not justify appellee in taking the dangerous path. He was familiar with the dangers to which he was exposed, and we must conclude he voluntarily assumed the hazard. He could have avoided all danger by a little inconvenience, but he did not choose to do it. The injury received must, therefore, be attributed to his want of ordinary care. The evidence shows the trains passed over that portion of the road with such frequency that there was a constant exposure to danger. No prudent man would expose himself on that part of the road without keeping a constant and vigilant watch for the approach of trains. This, appellee did not do. Neither appellee nor his companions discovered the trains until they were within a few yards of them, notwithstanding the fact the bells on both engines were being constantly rung. This fact itself is evidence of want of

15—72D ILL.

proper precaution. The conclusion is unavoidable. Appellee was not in the exercise of that degree of caution that a prudent person always adopts for his personal security. His negligence in this respect was greater than any that can be attributed to the company, by any fair construction of the evidence. The law, as announced by this court in a uniform course of decisions, from the time of *Jacobs' case*, 20 Ill. 478, to the present, is, that, where it appears the plaintiff's own negligence was the cause of the injury, or where the negligence of the parties was equal, or nearly so, there can be no recovery. It is only where the negligence of the plaintiff is slight, in comparison, and that of the party causing the injury is gross, that a recovery is warranted, except in cases where the injury is wilfully inflicted. There has been no marked departure from this doctrine. A sound public policy forbids there should be. There is no justifiable reason for relaxing the rule. If a party will not exercise ordinary care for his personal safety, he ought to bear the consequences that may ensue.

We are satisfied, from a careful consideration, the verdict in this case is warranted neither by the law nor the evidence. The judgment will therefore be reversed.

*Judgment reversed.*