## HOLT v. TEXAS MIDLAND R. R.

°(Court of Civil Appeals of Texas. Dallas. Nov. 1, 1913.)

1. MUNICIPAL CORPORATIONS (§ 657*) — STREETS—ABANDONMENT.

While the rights of the public in a street may be lost by abandonment, mere nonuser by the public or delay in opening or improving it, or permitting a railroad to occupy a part thereof, will not ordinarily show abandonment.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 722, 844, 1429, 1496; Dec. Dig. § 657.*]

2. RAILROADS (§ 356*)—INJURIES TO PERSONS ON TRACK—LICENSEES.

Where a railroad company knows that the public habitually uses its tracks in passing and repassing, notwithstanding a notice inhibiting such use, the users become licensees, instead of trespassers, but they must accept the tracks as they find them, and are guilty of negligence if they use the most dangerous way instead of the safest.

[Ed. Note.—For other cases, see Railroads. Cent. Dig. §§ 1228–1234; Dec. Dig. § 356.*]

3. RAILROADS (§ 381*)—INJURIES TO PERSONS ON TRACKS—LICENSEES—NEGLIGENCE.

Where plaintiff used defendant's railroad track, which he knew consisted of a trestle over a part of the public street, he was guilty of contributory negligence, as a matter of law, where there was another and safer way leading to his home, but a little longer; it appearing that plaintiff was only a permissive licensee.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1285–1293; Dec. Dig. § 381.*]

4. RAILROADS (§ 381*)—INJURIES TO PERSONS ON TRACKS—LICENSEES—NEGLIGENCE.

Where plaintiff was only a permissive licensee on defendant's tracks, he was guilty of contributory negligence, barring recovery for injuries occasioned by a fall from defendant's trestle, where it appeared that, though one side was guarded and made safe by a railing, plaintiff voluntarily chose the other side.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1285–1293; Dec. Dig. § 381.*]

Appeal from District Court, Kaufman County; F. L. Hawkins, Judge.

Action by J. S. Holt against the Texas Midland Railroad. From a judgment for the defendant, plaintiff appeals. Affirmed.

Ed. R. Bumpass, of Terrell, for appellant. Henry C. Coke, of Dallas, and Dashiell, Crumbaugh & Coon, of Terrell, for appellee.

TALBOT, J. This is an action for damages for personal injuries alleged to have been sustained by appellant in the city of Terrell on the 24th day of December, 1910, by falling off a bridge or trestle forming a part of appellee's railroad track in said city. The material facts, briefly stated, are as follows: The town of Terrell, being an incorporated town, in 1882 granted a franchise to the Texas Central Railroad Company, to construct its main line running the entire length of Callie street, and it did so construct the line when said road was built in 1882. Subsequently the Texas Central Railway Company was acquired by the Texas Midland Railroad. Callie street appears on the map of the town many years ago, but on a later map, which is on file among the papers in this cause, said street does not appear as a street, but in place thereof appears the name, Texas Midland Railroad. In the construction of the railroad it was necessary to build a bridge or trestle over a branch with dumps, approaching the bridge at each end. Later on the Texas Midland Railroad constructed some switches adjoining its track, and it was necessary for one of the switches to terminate near the bridge. To protect the trainmen handling the cars, the bridge was floored, and a railing placed on the west or left-hand side looking north, and on the same side as the switch stand, by which the switch was operated. There is and was no railing on the east side of the bridge. The bridge is between Nash avenue and High street. Nash avenue is not opened across the railroad or across what was formerly Callie street. It was opened no further than Delphine street on the west, and is not opened on the east at all. The city has never worked Callie street. There are no sidewalks on it, but there are residences, with their respective owners living in them, fronting on this street. Neither public nor private efforts have ever been directed towards making it passable for foot passengers or vehicles. The appellee's railroad track runs practically north and south in the city of Terrell, and the appellant lived on High street northeast of the bridge when he received his injuries. On the 24th day of December, 1910, about 9 o'clock at night, appellant left the Union Station, situated south of High street, in Terrell, to go to his home. He walked on appellee's railroad track, and as he was crossing over the bridge or trestle mentioned, walking on the east side thereof, his foot struck against something, and he fell off the bridge to the ground, about 12 or 13 feet, and was injured substantially as alleged in his petition. The night was dark, and there were no lights at the bridge. Whether appellant's foot struck one of the crossbeams of the bridge, a bolt projecting through the floor of the bridge, or some obstacle on the bridge appellant does not know. Appellant had traveled the route over the bridge frequently, and was familiar with its construction. This route was the nearest way to appellant's home, and the one adopted by a great many persons in going from Moore street and the Union Station to the territory where appellant resided, and they traveled along the track whenever they desired to do so. This use, however, of appellee's track and bridge was without its permission or consent. A person residing in the part of the city where appellant resided can reach his home by going east on Moore avenue one block, then north up Blanche street, but it had been raining, and on the occasion in question Blanche street was muddy. There are other streets also by which they can reach their homes. In going

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

along and over appellee's railroad track it was not absolutely necessary that appellant, in reaching his home, should walk over the bridge. He could have left the track at the bridge and crossed the branch it spans by walking on the ground over barrow pits. In building the railroad track along Callie street an embankment was thrown up from Moore avenue to Asylum avenue, to the north, and this embankment or dump between Nash avenue and College street is some 10 or 15 feet higher than the former level of Callie street, and at the bridge where appellant was hurt is about 12 or 13 feet high. The width of Callie street is 80 feet, and the railroad track is laid in the center of it. The dump of the road and barrow pits made in constructing it take up a large portion of the street. The city of Terrell has a population of 8,000, is incorporated and has been ever since the Texas Central Railroad was constructed. The Texas Midland Railroad is the successor of the Texas Central Railway Company, and succeeded to all its rights and privileges in the maintenance of the roadbed along Callie street and the operation of its trains over said road. At the point where Asylum avenue crosses Callie street and appellee's railroad, which is north of the bridge, appellee has a signboard, warning and directing persons not to walk on its track. While Nash avenue appears on the city map as crossing the Texas Midland Railroad, it does not in fact do so. No approaches or crossings have ever been constructed across the railroad at the point where the map shows that Nash avenue crosses it, nor has the city ever requested or ordered approaches built or the street opened at said point for the traveling public. Nor have the city authorities ever made any demand of the railroad company to make any changes in its roadbed or track; it has been allowed continuously since the original construction of the railroad to use Callie street with its main line and side tracks and switches, without objection or protest. At the conclusion of the evidence the court, upon motion, instructed a verdict in favor of the appellee, and appellant appealed.

The record is silent as to the grounds upon which the court's action in directing a verdict for appellee is based, but if for any reason appellant was not entitled to recover under the facts, the judgment must be affirmed. The principal contentions of appellant for a reversal are, in effect: (1) That while a railroad corporation, under our statute, shall have the right to construct its road across or along any street or highway, yet such corporation must restore the street or highway to "its former state or to such state as not to unnecessarily impair its usefulness," and that according to the testimony appellee did not do that in this instance. (2) That the evidence was sufficient to warrant the conclusion that by constructing and maintaining the bridge or trestle

from which appellant fell appellee invited the public to use said bridge, and that it failed to exercise ordinary care to make and keep it reasonably safe for such use, therefore was liable in damages for the injuries sustained by appellant. (3) That a pedestrian has the right to use all parts of a street consistent with the legal uses to which it is devoted. (4) That the extent to which streets are occupied by railroads under the provisions of an ordinance granting a franchise is a question of fact for a jury to determine; that if the appellee permitted the public to use the bridge in question as a highway, and the public had so used the same for a long time with appellee's knowledge, and if the bridge was so constructed as to operate as an invitation to the public to use it, it should be held liable for any injuries resulting from the negligent construction of the bridge; that these matters were, under the evidence, issues of fact for the jury. (5) That whether or not the appellee was guilty of negligence in failing to construct a railing on the east side of the bridge was an issue of fact for the jury. (6) That whether or not the failure to keep a light at the bridge was negligence and the proximate cause of appellant's injuries were issues of fact for the jury. On the other hand, the appellee contends that the undisputed evidence shows that Callie street along and upon which appellee's road was built had been abandoned; that a person using the premises of another for his own convenience takes it as he finds it, the owner owing him no duty to keep it in a safe condition; that appellant, well knowing the construction of the bridge, and the danger, if any, incident to its use, assumed the hazard of passing over it in the nighttime, and cannot recover; that the evidence beyond controversy shows that the appellant, in going to his home, had two ways of travel open to him, one a safe and the other an unsafe way; that he voluntarily chose the unsafe way for his own convenience, was thereby injured, and cannot recover.

[1] It seems to be well settled that the public rights in a street used as a public highway may be lost by abandonment, but, except when it is otherwise provided by statute, mere nonuser by the public, or delay in opening or improving the street or permitting a railroad to occupy a part of the street, is ordinarily not sufficient of itself to show an abandonment. 28 Cyc. 841. But whether or not the facts in evidence in this case were sufficient to show a loss of the public rights in Callie street we need not decide.

[2] We are of the opinion that according to the undisputed evidence appellant was not entitled to recover, and the peremptory instruction given by the court to the jury, directing a verdict in favor of appellee, was correct whether the said street had or had not been abandoned. The evidence is that

the bridge in question was generally and habitually used, by persons living east of appellee's road in the city of Terrell, in going to the Union Depot or business portion of said city and in returning to their homes, and, notwithstanding the notice posted on appellee's track directing persons not to use it, such use may have been such and with such knowledge of it on the part of the appellee as to justify a finding that the public had a license to use appellee's track and bridge as a passageway; but as said in Railway Co. v. Matthews, 100 Tex. 68, 93 S. W. 1068, and repeated in Railway Co. v. Byrd, 102 Tex. 263, 115 S. W. 1163, 20 L. R. A. (N. S.) 429, 20 Ann. Cas. 137: "An implied permission, such as is claimed, to use a railroad track as a footpath may relieve the person enjoying it of the imputation of being a trespasser, but it does not relieve the place of its inherent dangers, nor exempt the traveler from the duty to act with ordinary prudence. When he voluntarily chooses the dangerous pathway instead of a safe one beside it, we can see no escape from the conclusion that he is guilty of negligence, if there be no justifying or excusing circumstances." In Thompson on Negligence, § 6247, it is said: "If a traveler upon a highway has a choice of two ways, one of which is safe and the other unsafe, and if he knowingly chooses the one which is unsafe without any necessity for so doing he is deemed to take upon himself the risks of his foolhardy act; and if he is injured in consequence of it, he cannot recover damages of the municipality." To the same effect is Railway Company v. Hall, 72 Ill. 222, in which it is said: "It is negligence for a person to walk upon the track of a railroad, whether laid in the street or upon the open field, and he who deliberately does so will be presumed to assume the risk of the perils he may encounter. The crossing of a track of a railroad is a different thing. The one is unavoidable, but in the other case he voluntarily assumes to walk amid dangers constantly imminent. It is sought, in this case, to justify the conduct of appellant in traveling upon the track of the railroad by the fact that there were no good walks elsewhere on the street for persons on foot, nor had the street, outside of the roadbed, been graded to accommodate the travel. This was no fault of the railroad company. It was not its duty to grade the street. The street is 80 feet wide, and, if graded, it might be used with safety, as ordinary streets, notwithstanding the railroad is laid in it. But there was a path between the tracks and one at the side, which appellee could have used without the least danger. The side path was not so easy to walk upon as that between the rails, but that fact did not justify appellee in taking the dangerous path. He was familiar with the dangers to which he was exposed, and we must con-clude he voluntarily assumed the hazard. He could have avoided all danger by a little inconvenience, but he did not choose to do it. The injury received must therefore be attributed to his want of ordinary care." Irion v. Saginaw, 120 Mich. 295, 79 S. W. 572; Smith v. New Castle, 178 Pa. 298, 35 Atl. 973; Kenna v. Central Pac. Ry. Co., 101 Cal. 26, 35 Pac. 332; Atchison, Topeka & S. F. Ry. Co. v. Schwindt, 67 Kan. 8, 72 Pac. 573.

[3, 4] We are unable to see how it can reasonably be said, under the circumstances of the instant case, that a prudent man might have taken the way appellant adopted without being guilty of contributory negligence. It is clearly and indisputably shown by the evidence that appellant was perfectly familiar with the construction and condition of the bridge from which he stumbled and fell; that there was more than one open street furnishing a safe and convenient way he might have adopted in going to his home, and avoided crossing the bridge; that the bridge he fell from was floored on the west side, and provided with a railing for the protection of those using it; that this was a safe way to cross over the bridge, but that appellant, evidently with full knowledge of the nature of the structure and the danger to which he was exposing himself, chose to walk, not upon the side of the bridge near the railing, but near the east side, which was unprovided with a railing, and dangerous. The slight inconvenience of traveling one of the open streets because of the trifling increase in the distance to appellant's home did not, in our opinion, justify him in taking the dangerous route; but, if mistaken in this, it is certain that appellant was not justified in taking the dangerous side of the bridge in his attempt to pass over it, instead of an easier and safer way on the west side. As before stated, he was familiar with the construction of the bridge, and the danger to which he was exposed in passing over the bridge as he did, and it must be concluded that he assumed the risk. He could have avoided the danger by a very little inconvenience in traveling over Blanche street, or by walking on the west side of the bridge, but he did not choose to do either; and, as said in Railway v. Hall, supra, the injuries he received must be attributed to his want of ordinary care. In other words, we are clearly of the opinion that appellant was guilty of contributory negligence in the respect indicated, and was not entitled to recover.

The other assignments need not be discussed. In the view we take of the case, the question raised by them becomes immaterial. We will say, however, that in our opinion, the court committed no error in the rulings to which these assignments relate.

The judgment of the district court is therefore affirmed.